Our last case of the day is Smith v. Dewberry. Ms. Stokes, we're ready when you are. Thank you, Your Honors, and may it please the Court. My name is Tinsley Stokes, and I represent Lester Smith, who was stabbed two hours after warning the prison officials this attacker had threatened him with a knife. Then, because he complained about the unsafe conditions that he experienced during a Department of Justice investigation, those same officials moved him into a dorm that they knew houses the attacker's fellow gang members that had recently threatened his life. In response, Mr. Smith filed a 1983 suit alleging failure to protect and retaliation. The District Court granted summary judgment, but this Court should reverse for three reasons. First, the District Court improperly applied Local Rule 56.1 to dismiss Mr. Smith's claims by deeming the prison officials' statement of facts admitted without providing notice of the rule. Second, the District Court failed to adequately review the party's citations to the record, as there are still several genuine disputes material fact. And third, the District Court abused its discretion by failing to appoint counsel. As for the first issue, the District Court dismissed Mr. Smith's claims on the basis of a procedural local rule without providing him notice as required by his pro se status. The relevant rule, Rule 56.1, requires that a summary judgment response contain numbered responses that correspond to the movement statement of facts. While Mr. Smith responded to the prison officials' key allegations and even indicated to the District Court which paragraphs he was responding to, he did not specifically number his own paragraphs to correspond to the prison officials' statement of material facts. So the District Court deemed the prison officials' facts admitted, disregarded Mr. Smith's evidence, and granted summary judgment. I'm very sympathetic to your argument that he should have been notified about that rule, but aren't we looking at this under a plain error standard? Yes, this is under plain error if necessary in the interest of justice because the District Court never received Mr. Smith's objections. However, that high burden is met here, both because this Court has made it very clear that a District Court must provide notice to pro se litigants before dismissing their claims on the basis of a local rule, and also because this Court made clear in Reese v. Herbert that a District Court must review the party's citations to the record before dismissing a claim on the basis of Local Rule 56.1. Some of the cases that you cite in support of that notice rule, were from holdings related to subsection C of the old Rule 56. Should we apply those cases here, and is it clear that we should do so? It is clear to do so here, and they should be applied in this instance. This Court has held on multiple occasions that under Rule 56 there is a notification requirement to notify the parties of all requirements for responding to a summary judgment motion, and this Court has repeatedly held in cases of policy reason of notifying pro se litigants of local rules because it is unfair for their cases to be dismissed on mere formalities due to their lack of legal training. But did this case really get dismissed because of the violation, or instead did the Court make a particular judgment about the existence of evidence and then weigh the evidence without considering that? This case was dismissed on the basis of Local Rule 56.1. I would first like to point out that this Court has specified that when Local Rule 56.1 is not adhered to, the District Court has before it the functional analog of an unopposed summary judgment motion. And here the District Court's order, the analysis was only focused on the deemed facts from the prison officials and did not respond to Mr. Smith's allegations when it was reviewing his failure to protect claim and his retaliation claim. That shows that they were using the deemed facts to dismiss Mr. Smith's claims because of Local Rule 56.1. Had it not been applied here, they would have balanced Mr. Smith's allegations that were contrary to the deemed facts. Additionally, the District Court did not only err because of the lack of notice, but also because it failed to adequately review the party's citations to the record. As I noted before... It's one of the deemed facts they said was that the only complaint was about Muslims in general attacking other people. And they gave a cite in the District Court order. But when you go look at the cite, you see there's testimony that doesn't support that, that shows that really he and two others said it was attacks against us by name. So the argument is the deemed facts the District Court used, the record didn't support some of the deemed facts. The argument is that the citations to the record do not support the... Deemed fact. Yes, Your Honor. Okay. On those exact pages that the prison officials did cite to, you're correct that on page 15 of his deposition, he was asked whether this was a generalized threat, and he responded that no, this wasn't a threat to him. And the deemed fact by the District Court from the state's, or the defendant's, was that there was no specific threat, it was only a generalized threat. And that was incorrect because when you go look at it, you see there was more than that. Yes, Your Honor. Okay. Both the... It seems like to me we could avoid all kinds of issues here, just say, okay, he didn't object, whatever, but they didn't. The facts, the District Court has an obligation to at least make sure the so-called undisputed facts are actually, or the deemed facts are correct. Yes, Your Honor. And supported by the record citations. Otherwise, they could say anything. The record could not be there, and that's it. Yes, Your Honor. That is one of the things that this Court held in Reese v. Herbert, is that Local Rule 56.1 should not be used to grant summary judgment when it is unsupported by the record. And here, the move-in's own citations fail to meet their burden of showing that there are no genuine disputes of material facts. And I'm getting into that so that your colleague can be ready to reply to that. Yes. And there are genuine disputes of material facts for both his retaliation claim and his failure to protect. As you noted, the District Court found— I don't know about the retaliation part, but I think the specific notice, whether they did it or did not have it, the facts didn't necessarily support that. The causation's pretty tenuous here, so I don't know that retaliation's that good of a claim here, but you have this problem that I've identified. The failure to protect claim was established through his detail of Mr. Miten's threat to him. His retaliation claim was also sufficiently established here, as Mr. Smith did allege. The prison officials were aware that he participated in the Department of Justice investigation, that they were aware that he had been threatened  and that they moved him into that dorm in retaliation for his participation in the Department of Justice investigation. That is sufficient evidence to raise genuine disputes of material facts, yet the District Court found it undisputed that the prison officials were not aware of his involvement, nor were they involved in the move. Mr. Smith alleged that the defendants were the very persons to choose for him to be moved and that while he was being moved, he pleaded for them to not move him because he was feared for his life, yet in response, the prison officials simply smirked at him while another official told him, we do not like inmates who tell on us. This is sufficient to raise genuine disputes of material facts for his retaliation claim. On your failure to protect claim, what's your most similar case? Do we need to find a similar case in order to find for your client? Setting aside all the other issues, but do we need to find a similar case? Under the plain error standard here, this court can reverse without relying on a similar case. However, there are two similar cases that are particularly relevant here. The first is Rodriguez v. Secretary for the Department of Corrections. In that case, this court held that there could be found a substantial risk of serious harm when the inmate had warned the prison officials that he feared for his life because he received threats from his former gang members. How many threats did the inmate report in the Rodriguez case? I believe there were multiple instances of threats being warned. However, the single instance from Mr. Smith should be sufficient here. And over the course of how long were those threats reported? Was it a two-hour period like it was here, or was it an extended period of time in Rodriguez? It was an extended period of time in Rodriguez. Aren't those two big differences the reason why for plain error purposes? We can't say that that case is close enough to this one that we would find plain error for the district court having determined contrary to that. I believe despite those slight differences, it is relevant here to find plain error, as the most important part of that case is that substantial risk of serious harm could be found due to the threats, particularly coupled with Caldwell v. Warden F.C.I. Talladega, in which this court found that there was a substantial risk of serious harm when the prisoner warned the officials that he feared for his life because another prisoner had placed him in a dangerous situation. That is also relevant here, as the warning there was in much closer proximity to the attack in that case. Here, Mr. Smith warned the prison officials that a known pre-aggressor and gang member had threatened him with a knife. That is sufficient to raise a genuine dispute of material fact as to whether there was a substantial risk of serious harm here. Additionally, in that case, in Caldwell, this court specifically held that the prison officials' failure to do anything in response to that threat was sufficient to create a clearly established law that the prison officials' acts were unconstitutional. Here, despite these warnings, the prison officials did nothing to respond to Mr. Smith's warning except for state, what do you want us to do about it, lock him up. That is sufficient to establish that their acts were unconstitutional. The district court never addressed qualified immunity, did it? Because it said there was no claim. I see I'm out of time. May I respond to this question? Of course. Thank you. No, the district court did not address qualified immunity. I just want to make sure. Thank you. Thank you. I'll reserve the rest of my time. Thank you. Ms. Cusimano. Good morning, and may it please the court. I'm Ellen Cusimano on behalf of the appellees. I think there are several ways and several reasons for this court to affirm the grant of summary judgment below. Can I ask you about one of them that we didn't really talk about in the last argument? Yes. Is this waived? Is the failure to object waiver? I think the court could certainly find that, yes. You know, I think in order to overcome the waiver that Mr. Smith has the burden of showing that. It's both necessary and in the interest of justice. That is correct. And he did not do that in his initial brief. But I do recognize that in his reply brief, he did come forward with facts to at least show that. So I do think we. So how would you recommend that we do it? Would you recommend that we decide this on waiver? Or would you recommend that we decide this on plain error? Well, at first, I would certainly prefer that you decide it as, as these issues have been waived, in which case this court. Did you argue waiver? I thought you argued plain error. We argued waiver in our brief, Your Honor. You did. Yes, we did. But, but I also recognize that if this court wasn't going to review this case at all, we probably would not be here today. So I do, for the purposes. Don't assume that. You're correct, Your Honor. But I think the easiest way to say that is, is if this has been waived, the court won't review this case at all. So for the purposes of this argument, I am going to proceed as if it is applying the plain error standard of review. And, and again, I think the easiest way for this court to affirm here is to recognize that even when you consider all of the evidence in the case, including Mr. Smith's evidence, Mr. Smith still cannot establish a constitutional violation. And so I want to go through primarily his failure to protect claim and explain why that's true. When you look at his claim and all of the evidence that goes to that claim. What about Caldwell? So I think there's, Judge Hull made reference to this, but the record shows, and, you know, at the very least, we have to look at the deposition that was attached to the state's motion here. Absolutely. And that includes Mr. Smith's deposition at page five, docket entry 144-6, which lays out, I think, his statement about what he told or what was communicated to the officers. And there was a significant amount of information that was communicated to the officers that seems pretty specific. I'll lay out just what I think is some of them. For example, Myton is down in the dorm making threats and threatening to hurt some of my Muslim brothers. We feel it's going to be a situation that's going to lead to violence. He made a threat toward myself, Simmons, and the other guy. I didn't feel safe. I mean, the man had a knife. He visibly had that displayed. I don't feel safe in that dorm with that guy. He's walking around with a knife on him, making these threats. You need to do something. That's the testimony from the page that I cited. So, my question to you is, why is that not like Rodriguez and why is that not like Caldwell? Well, as for why it's not like Rodriguez, in Rodriguez the plaintiffs specifically told the prison officials what the substance of the threat was. And the substance of the threat was, these gang members said they were going to kill me. Here, Mr. Smith never disclosed the substance of the threat. Really? He made a threat towards me and showed him a knife and that this situation is going to lead to violence? And he threatened to hurt my Muslim brothers? So, he has to say I'm going to stab you? That's the difference? Well, I think he has to actually say what the substance of the threat is. And, Your Honor, he did. I think it's pretty fair to say that the government misrepresented the state of the record when describing those statements. And, from my perspective, that's inexcusable. And, Your Honor, I apologize for that. But I do believe we quoted, you know, from his deposition testimony about saying that there was a threat that was mentioned. Not you. I think Judge Grant is referring to what happened in the trial court. Yes. And, yes, Your Honor, I do agree with you on that. But when you look at, so, for example, he doesn't disclose the specific words that inmate Miten told him. And what we do know now, we actually do know what the substance of the threat was. And that was, and I quote, F you. I don't give an F about this Muslim stuff. I'll F you up. End quote. And I think perhaps the most important fact in this case is that Mr. Miten was not the instigator of this incident. Instead, a different inmate attacked him. And when he turned around to defend himself and respond to that attack, he inadvertently thought that Mr. Smith was the instigator because Mr. Smith was standing behind him. When he realized that was not the case, he left Mr. Smith alone and went after the person who actually attacked him. But I don't understand here. When somebody says another inmate has a knife, think about this. Another inmate's walking around with a knife. We all know it's contraband. We all know inmates frequently have knives. Everybody knows that. And it's very dangerous in jail. And he says he's threatening to hurt some of my Muslim brothers. And they say, well, but is it you? And he said, yes, me. He's threatening to hurt me. And he's very specific. He's got a knife walking around. Okay. How can the prison officials not do something in that? Why is it permissible for them not to do something? Well, I think it's important that Mr. Smith never connected the knife to the threat. So, in other words, this isn't a situation. It does appear in the testimony. Well, Your Honor, for example, this isn't a situation where he says, Mr. Mighton threatened to stab me with a knife, or even brandished the knife in front of his face. No, he says he's threatened to hurt me with a knife. And, Your Honor, I do have to disagree. When you look at the specific testimony, what he said is, quote, I told Mr. Dewberry, look, I don't feel safe in that dorm with that guy. You know he's walking around with a knife on him, you know, making these threats. So I don't see that as saying that. I'm not going to argue with you. Two lines before that, he's threatening to hurt me. So, I mean. Sure. And, Your Honor. Just don't take one phrase out of context. Let me fast forward a little bit. It seems to me that, at least with regard to Rodriguez, there are some significant differences. One is the amount of time that they were reported the threats. It was months in that case. And the number of times it was reported. It was a series of threats. And that, I think the court said there, led to there being the indication that it was, it took it from the possible to the serious, that it was seriously going to happen, or that it was substantial. The possible to the substantial risk. What about Caldwell? I'm sorry, can you repeat that? Caldwell. Caldwell. The Caldwell case. Caldwell, I also think, is different. Why? Because you have a situation where Caldwell and the plaintiff were in a cell together. And Caldwell started a fire with the plaintiff in the cell. And despite that, the prison officials still put both of those inmates back in the same cell. So, in that case, we have a prior incidence of potential violence between the two inmates. And we don't have that here. In fact, the prison officials testified, and this is undisputed, that they were not aware of Mr. Might's assault of nature, and they were not aware of any conflicts between the two inmates. And, Your Honor, if we set aside the information about the knife for just one moment, what we have here is a general threat where the actual words of the threat were not disclosed. I think you're absolutely right. You take the knife out of this, they say he's walking around with a knife, and he said, oh, he's just threatening to hurt me. You know, even he's saying. You take the knife out of it, it's a different case. You've got three inmates, allegedly. Who knows whether they did it or not? But we have testimony that three inmates said he's got a knife. The knife is the key to the case. Yes, and so I think the question then becomes, can Mr. Smith overcome qualified immunity by pointing? Well, the district court didn't do that. Why should we do that? We don't do that the first time. I mean, should we send it back to the district court to go address all that? And he's got a lawyer now. Let him develop the record, and then they can decide qualified immunity. Well, we did brief it below, and I think under the right for any reason rule. I know, but the district court didn't address it. Sure. Okay, so if we put qualified immunity aside, we're still proceeding under the plain error standard. And for there to be a plain error, there has to be a case from either the Supreme Court or this court that conclusively resolves the issue. In other words, it has to be so obvious that any judge in the entire circuit would have reached the opposite conclusion reach, right? Well, I think that's the obvious clarity exception for qualified immunity. I think it's pretty close to the plain error standard of the civil side, but I'll take your word for it. Yes, it is very close, but still, there has to be a case that conclusively resolves the issue. And I don't think Mr. Smith has pointed to such a case here. Well, does it have to conclusively resolve the case, or does it have to conclusively resolve the question? Because certainly we have cases that say the district court needs to review the facts completely and figure out what happened, even if there aren't facts on the other side, right? Correct, but I think it has to conclusively resolve the issue so that it is clear that if an error happened, it is not a plain obvious error because there is no precedent that clearly states that. And so for that reason, because we're proceeding under the unique standard of plain error review, even if the district court made some errors in its analysis below, at the end of the day, the ruling was correct, and so this court should affirm. I know this court really didn't find much to say about the retaliation claim, so I'm not going to address that unless this court has— Clarify for me, because I was under the impression that the people that actually moved him really didn't know about the DOJ. I'm not sure they have anything other than temporal proximity here, but maybe I'm wrong about this. Maybe they did know the people that are assigning people to cells and everything. What about Deputy Warden Dewberry? It appears that days after he spoke with the FBI investigator, he told the inmates in Y1 to line up and along with Illa played an eeny, meeny, miny, moe game to pick Smith as a transfer to the D-dorms. Is that what the record reflects? That is what Mr. Smith has testified, but the reason I don't think that matters is because there's no evidence that Mr. Dewberry or any of the other prison officials knew about Mr. Smith's involvement in the federal investigation. So the only inference would be a temporal inference that it happened and then a few days later, Deputy Dewberry was involved in the transfer, correct? Correct, but even then I don't think it matters if Mr. Dewberry was not aware of the involvement. Well, in at least certain aspects of our case law, we've said temporal proximity can establish an inference. I guess my question to you is, for plain error purposes, have we ever said that in this context, a First Amendment retaliation context, that temporal proximity alone is sufficient to overcome summary judgment on the causation issue? No, it has not, Your Honor. Help me with Dewberry's knowledge. Did he say, I didn't know of his involvement or just they failed to prove he knew? What is the status of the record? The record shows that on pages 33 and 44 of Mr. Smith's deposition testimony, he did testify about who he thinks was aware of his involvement. He says the same thing on both pages. We don't have any from Dewberry saying, I didn't know. I believe that that is in their declarations, Your Honor. Okay, so Dewberry has affirmatively said, I didn't know. How did the DOJ interview the inmate without the warden knowing? I mean, it can't happen. And, Your Honor, I'm not sure about that because that is not in the record. But I would point the Court to Mr. Smith's deposition testimony on 33 and 44 where he says that as he was giving the interview with the federal agent, Deputy Warden Black and the CERT team were outside in the hallway. They are not defendants in the case. And that is the only evidence we have in the record of who would have been aware of his involvement in the federal investigation. Didn't the District Court accept the statement that no defendant had any involvement in the move to the different cell block? That is correct. And there is no evidence that Mr. Dewberry was involved in the move to the cell block? I don't believe there is, Your Honor. I believe they all testify that they were not, they did not authorize the move. I know that's what they testify to, but in Mr. Smith's deposition, I think Judge Hull just talked to you about the eeny, meeny, miny, moe. Right. I'm sorry, Judge Grant I think said it. There was testimony from Mr. Smith's deposition that Dewberry played that game in order to and was involved in order to determine who got sent. So how could it be that no one had any involvement in the move? And perhaps, Your Honor, that is correct. I would say, you know, again, two things. There's no evidence that he knew about the involvement in the investigation. And there's also evidence in the record that the movement occurred due to dorm stratification, which is something that happens frequently in the prison context. And again, just to bring all this back to the plain error review, there are no cases from this court or the Supreme Court saying that what the prison officials did here rose to the level of retaliation. And I see that my time is up, so thank you. Thank you. Ms. Stokes, you've got four minutes for rebuttal. Thank you, Your Honors. And may it please the Court, I would first like to clarify that in Defendant Dewberry's statement, he stated that he did not state that he was not involved in the move, but that he was not the one to authorize the move. And Mr. Smith has alleged not only that he was the one to choose him to move, but that he was aware of his involvement in the Department of Justice investigation. Mr. Smith noted that he was present during that investigation. And in his deposition, he did state that the Defendant Dewberry's words suggested that he was aware of his participation in the Department of Justice investigation. Repeat that last part. What's your evidence of his awareness? On page 48 of his deposition, Mr. Smith notes that Defendant Dewberry suggested that he was aware of his Department of Justice investigation participation. He doesn't lay a foundation for that. That's hearsay, really. I mean, he doesn't say how he knows he was involved or that he was present or anything. He doesn't give specifics of how he was. He doesn't give us any basis for him making that statement. Not in his deposition. He does not detail how. He just notes that it was suggested. However, there is also the evidence that— Suggested that Dewberry was involved and knew about the investigation. Yes, Your Honor. Additionally, there is the evidence that another inmate did tell him. We don't like inmates who tell on us. That is indicative that the prison officials around him were also aware of his participation. Moving to the plain error standard, Mr. Smith has not waived his right to appeal in this instance. It is only that it is under the plain error, if necessary, in the interest of justice standard. There are several cases which do meet this burden. The first, under the notification requirement, I would like to point this court to Griffith v. Wainwright, in which this court did note that in summary judgment, the pro se litigant should be made aware of the requirements of responding to summary judgment. That goes to Judge Grant's question that she asked you. That's specific to the old version of Rule 56C, which is it's been amended. Can we say for plain error purposes that that same rule would apply to a local rule that's different and separate from that? I believe so, Your Honor, especially considering the policy considerations are not only applied in Rule 56 cases, but also in cases under Rule 41. The policy considerations here behind the rule are still very much in play, as Mr. Smith was a pro se litigant and his case was dismissed on a mere formality. Can I go back to where you started about what Mr. Dewberry testified to, the question that Judge Grant and Judge Hall asked you? So I'm looking at page 47, which is the little page. It's page 13 of the CMECF site. Is this what you're referring to where he's asked, so are there any other, you told me a couple of things, are there any other reasons you think your move to D-1 was retaliatory? Any answers? I want to say Dewberry had kind of suggested, like said something slick, so to speak. I think I put, I want to say I put that in my complaint. Like I said, that was a long time ago. I can't recollect exactly what happened and who said what. That's why when I wrote my complaint, everything was fresh, and I would just refer you back to my complaint as so far as everything, I can't recollect. Is that what you're referring to? Yes, Your Honor. Okay. In returning to the plain error standard, the district court also committed plain error not only by failing to provide notice to Mr. Smith, but also in failing to review his citations to the record, or the prison official's citations to the record to be specific, as they do establish that there are genuine disputes. Let's assume for the moment we agree with you that that is, that was error and that error is plain. Could you, could we say it affected your substantial rights if at the end of the day this case doesn't fit squarely within any of our other cases that you would prevail on? In other words, if we were to find based on this record that ultimately you can't prevail under any sort of theory of retaliation or failure to protect? Yes, Your Honor. Especially here because the district court did not review the case. In considering Mr. Smith's facts, the district court's order did not reflect that they did a meaningful review of the record here. And additionally, it does fall within the cases that were cited. I see that I'm out of time. May I finish responding to the question? Thank you. Under Rodriguez, it is relevant here because Mr. Smith's threats were sufficient to raise the substantial risk of serious harm. Those threats were immediate, especially under Caldwell's special, or considering Caldwell. Mr. Smith's threats were sufficient to raise that substantial risk of serious harm. And just like in Caldwell, the prison officials committed error by failing to do anything in response to that substantial risk and allowing Mr. Smith to be let into a common area with someone who had recently threatened him with a knife. As I'm out of time, I'd like to thank you. Yes. Thank you, Ms. Stokes, and thank you to everyone at the UGA clinic. You all did an excellent job representing your client, and the court appreciates your service. Thank you. That was our last case for the day, and so we are now in recess. Thank you all. All rise.